IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT R. KEMLY and GABRIELLE KEMLY, *his wife*, | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil Action No. 13-7059 (JBS/KMW) |
| v. | |
| WERNER CO. and JOHN DOES 1-100, | **MEMORANDUM OPINION** |
| Defendants. | |

**SIMANDLE, Chief Judge:**

While using Defendant Werner Co.'s (hereinafter, "Defendant") AP20-MPJ Work Platform, a 41" tall portable aluminum work platform supported by two collapsible legs (hereinafter, the "work platform" or "platform"), Plaintiff Robert R. Kemly (hereinafter, "Plaintiff") suffered injuries during dismount when his legs presumably slipped and came down across the metal locking mechanism for the platform's collapsible legs.

As a result of these injuries, Plaintiff brought claims against Defendant under New Jersey's Products Liability Act (hereinafter, the "PLA"), on the ground that Defendant sold its work platform "in a defective condition." (See Compl. at ¶¶ 5-14.) Plaintiff claims, in particular, that the placement of the locking mechanism on the outside of the platform, where it was not shielded or recessed from "probable and foreseeable human

contact," constituted a design defect and the proximate cause of his injuries.  (See id. at ¶¶ 9-13; see also Leshner Rep.)

Defendant now moves for summary judgment, arguing that Plaintiff's injuries resulted solely from platform misuse and, relatedly, that the placement of the locking mechanism did not, as a matter of law, proximately cause Plaintiff's injuries. (See Def.'s Br. at 6-13; Def.'s Reply at 7-9.)  Defendant further claims that Plaintiff's case rests, almost entirely, upon the faulty and unreliable testimony of one engineering expert, Ervin Leshner.  (See Def.'s Br. at 13-24; Def.'s Reply at 8-9.)  Plaintiff, by contrast, submits that the inherently fact-sensitive product liability issues implicated here require a "weighing of evidence precluding summary judgment."  (Pl.'s Opp'n at 6-17.)

The principal issues before the Court concern whether the undisputed record creates an inference of a cognizable defect in Defendant's work platform, and whether this defect, if any, arguably contributed to (or, proximately caused) Plaintiff's injuries.  For the reasons that follow, Defendant's motion for summary judgment will be denied.[1]

The Court finds as follows:

---

[1] The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

1.  **Factual and Procedural Background**.[2] Since 1984,
Plaintiff has worked as an installer of "window films" (Pl.'s
Dep. at 10:8-12:12:25), and has required an array of ladder
systems and work platforms in order to reach otherwise
"unreachable" windows.  (Id. at 22:1-25:3.)  As a result,
Plaintiff purchased Defendant's work platform (see generally id.
at 28:7-18), which consists of three principal components: (1) a
"non-skid" work surface "for standing," (2) platform "legs
[that] lock securely in place when in use and fold underneath
the platform for compact storage," and (3) a step (built into
the legs) for safe and stable access to the platform.[3]  (Ex. B to

---

[2] Neither party filed a statement of material facts consistent
with the provisions of Local Civil Rule 56.1(a).  Defendant, for
example, failed to provide a separate statement of material
facts as required by Local Civil Rule 56.1(a) ("Each statement
of material facts shall be a separate document (not part of a
brief) and shall not contain legal argument or conclusions of
law.").  Nevertheless, it imbedded a detailed and supported
statement of undisputed material facts within its briefing (see
Def.'s Br. at 4-6), and has therefore complied with at least the
spirit of the Local Civil Rule.  Plaintiff, by contrast, has not
even attempted to meaningfully comply with the requirements of
Local Civil Rule 56.1(a).  Rather, Plaintiff submitted a three-
paragraph section of "uncontested facts," which lack any
citation to record evidence, and fail to respond to and/or rebut
Defendant's statement.  (See Pl.'s Opp'n at 2.)  As a result,
the Court will deem the facts set forth in Defendants' statement
undisputed for purposes of the pending summary judgment motion,
unless otherwise indicated.  See L. Civ. R. 56.1(a) ("[A]ny
material fact not disputed shall be deemed undisputed for
purposes of the summary judgment motion."); see also N.J.
Carpenters Pension Fund v. Housing Auth. & Urban Dev. Agency of
the City of Atl. City, 68 F. Supp. 3d 545, 549 (D.N.J. 2014).

[3] The platform (and its locking assembly) specifically appears as
follows:

Def.'s Br.)  The platform, in turn, bears prominent **"SAFETY INSTRUCTIONS,"** regarding the manner in which to **"SET UP," "USE," "MAINT[AIN],"** and **"ACCESS"** the work platform.  (Exs. C, E, & I to Def.'s Br (emphasis in original).)  As relevant here, the instructions direct users to engage the legs' locking mechanism prior to use, and then to "[f]ace [the] platform" with "body centered between the side rails" when climbing up or down the steps.  (Ex. E to Def.'s Br.)  Given the nature of the platform, the instructions further advise users "[n]ever [to] climb [the] platform from the side unless secured from sideways motion and tipping."  (Id.)  In order to dismount the platform, "a user would simply back off the platform, climb down to the step



Large platform provides a non-skid area for standing

Locking mechanisms

Platform legs lock securely in place when in use and fold underneath platform for compact storage

Non-marring feet provide slip-resistance and protect floor from damage

(Ex. C to Def.'s Br.)

4

below," and then descend "from the step" onto the ground. (Def.'s Br. at 5.)  In other words, when used appropriately, "the user's body would remain at all times within the width of the platform" and its steps, and would not come into contact with the locking mechanism that rests on the exterior surface of the platform at the point of connection between the work surface of the platform and its legs.  (Id.; see also Ex. C to Def.'s Br.)

2.   On July 27, 2011, Plaintiff mounted the work platform using the step system, in order to perform "a final cleaning" of a window prior to applying a privacy film.  (Pl.'s Dep. at 66:1-68:17.)  Following the cleaning, Plaintiff attempted to dismount the platform by directing his left foot down towards the step, while stabilizing his body on the platform with his right foot. (Id. at 70:1-72:16.)  Plaintiff, however, somehow slipped and fell on the platform before making contact with the step, causing the inside of his right knee to slide down across the locking assembly (and to be cut by its protruding metal components).[4]  (Id. at 71:21, 79:18-81:3.)

---

[4] In his briefing, Plaintiff proffers no precise explanation concerning how his leg came into contact with the locking assembly.  (See generally Pl.'s Opp'n.)  Rather, Plaintiff and his expert simply state that "the inside of his knee came down with substantial body weight and/or inertia across the latch mechanism."  (Leshner Rep. at 1.)  Nevertheless, at his deposition, Plaintiff conceded that the contact with the locking

3.   As a result of these injuries, Plaintiff filed this litigation, alleging that the location of the locking mechanism on the exterior (or, outside) of the legs (rather than in a recessed position, or in the same position but protected by a deflective shield) constitutes a design defect.[5]  (See generally Compl.)  Following the conclusion of pretrial factual discovery,[6] the pending motion of summary judgment followed.

4.   **Standard of Review**.  Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Alabama v. North Carolina, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted); see also FED. R. CIV. P. 56(a).  In evaluating a motion for summary judgment, the Court must view the material facts in the light most favorable to the non-moving party, and make every reasonable inference in that party's favor.  See Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).  An inference based upon "'speculation or conjecture,'" however,

---

assembly must have occurred because he slipped, fell, and/or stumbled during dismount.

[5] Plaintiff filed his initial state court Complaint, together with his wife, Plaintiff Gabrielle Kemly, for "personal injuries, pain [and] suffering, [and] loss of consortium (by wife)" on July 3, 2013, and Defendant removed the action to this federal Court on November 20, 2013.  [See generally Docket Item 1.]

[6] The parties conducted a lengthy period of pretrial discovery that concluded in May 2015.

"'does not create a material factual dispute sufficient to
defeat summary judgment.'"  <u>Halsey</u>, 750 F.3d at 287 (citations
omitted).  Rather, the non-moving party must support each
essential element with concrete record evidence.  <u>See</u> <u>Celotex
Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  "Where the
record taken as a whole could not lead a rational trier of fact
to find for the non-moving party," the Court may grant summary
judgment.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
Corp.</u>, 475 U.S. 574, 587 (1986).

    5.   **Admissibility of Leshner Report**.  Because Plaintiff's
theory of liability hinges upon expert testimony (and because
the Court may consider only admissible evidence on summary
judgment), the Court addresses, at the outset, Defendant's
objections to the admissibility of Plaintiff's liability expert,
Mr. Leshner.

    6.   Mr. Lesher, a registered professional engineer, issued
a two-page expert report on September 29, 2014, in which he
concluded, to a reasonable degree of engineering probability,
that the placement of the locking mechanism "in a position where
it [could] act as a can opener upon" anything "placed/dragged
against it" constitutes a design defect[7] and "an efficient

---

[7] Mr. Leshner's report speaks in terms of a "design defect" and a
"manufacturing defect."  (Leshner Rep.)  Nevertheless, Mr.
Leshner clarified in his deposition that his case concerns only
a "design defect" (Leshner Dep. at 86:1-6), and Plaintiff's

proximate cause" of Plaintiff's injuries.[8]  (Leshner Rep.)  Mr. Leshner then defended his opinion during his deposition, when he explained that he "instantly" recognized the "defect" upon inspection of the work platform, and stated that the nature of the protruding locking mechanism "contributed" to Plaintiff's injuries.  (Leshner Dep. at 51:41-53:11, 86:14-87.6)

7.   In claiming that Mr. Leshner's report and testimony prove "inadmissible and insufficient to support Plaintiff's product liability claims," Defendant argues that Mr. Leshner "fundamentally erred" in rendering an opinion, because he supposedly refused to accept Plaintiff's testimony regarding how he "got on and off the platform" and concerning how "he slipped from the platform."  (Def.'s Br. at 14-23.)  Plaintiff, by contrast, claims that Mr. Leshner "appropriately describe[d] the facts he relies upon, the history of ladder type products and

---

briefing reflects the consistent position that this action concerns only an allegation of design defect.  (See Pl.'s Opp'n at 3 (discussing only design defects).)

[8] Neither party addresses the propriety of Mr. Leshner's opinion that the locking mechanism "proximate[ly] caused" Plaintiff's injuries.  Nevertheless, the Court finds that Mr. Leshner's opinion on the issue of causation plainly exceeds permissible bounds, because his conclusory opinion in this narrow respect "'merely tell[s] the jury what result to reach'" on an element on Plaintiff's PLA claim.  Krys v. Aaron, ___ F. Supp. 3d ____, No. 14-2098, 2015 WL 3660332, at *5 (D.N.J. June 12, 2015) (citing FED. R. EVID. 704 advisory committee's notes (1972)) (defining "the line between permissible testimony on ultimate issues and an impermissible legal opinion").  As a result, the Court finds this aspect of Mr. Leshner's opinion inadmissible.

acceptable alternative designs," and otherwise provided an
admissible expert opinion.  (Pl.'s Opp'n at 15.)

8.    Federal Rule of Evidence 702 "embodies a trilogy of
restrictions on expert testimony: [1] qualification, [2]
reliability, and [3] fit."  Schneider v. Fried, 320 F.3d 396,
404 (3d Cir. 2003) (citing In re Paoli R.R. Yard PCB Litig., 35
F.3d 717, 741–43 (3d Cir. 1994)); see also FED. R. EVID. 702.  As
relevant here,[9] in determining reliability, courts focus upon
whether the expert's conclusion rests upon "the 'methods and
procedures of science' rather than on 'subjective belief or
unsupported speculation.'"  Calhoun v. Yamaha Motor Corp.,
U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (quoting Daubert v.
Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993)).[10]
Reliability, however, does not require the proffering party to
demonstrate the "correctness" of the expert opinion.  In re
Paoli, 35 F.3d at 744 (concluding that the "evidentiary

---

[9] Defendant mounts no specific challenge to Mr. Leshner's
qualifications, nor to the general "fit" of his opinions to the
disputed issues of liability in this litigation.  (See generally
Def.'s Br. at 14-24.)

[10] Where the reliability turns upon the intricacies of an
expert's scientific technique, Daubert (and its progeny) directs
courts to undertake an inquiry, in essence, into whether the
disputed technique has gained acceptance in the relevant
scientific community.  See In re Paoli, 35 F.3d at 742 n.8
(listing the relevant factors).  These "specific factors neither
necessarily nor exclusively applies to all experts," Kumho Tire
Co. v. Carmichael, 526 U.S. 137, 141 (1999); see also Kannakeril
v. Terminix Int'l, Inc., 128 F.3d 802, 806-07 (3d Cir. 1997)
(same), and have no application here, in view of the simplicity
of Mr. Leshner's opinion and the work platform.

requirement of reliability" amounts to a lower burden "than the merits standard of correctness"). Indeed, so "long as an expert's scientific testimony rests upon good grounds ... it should be tested by the adversary process – competing expert testimony and active cross-examination – rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." United States v. Mitchell, 365 F.3d 215, 244 (3d Cir. 2004) (quoting Ruiz-Troche v. Pepsi Cola Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)) (emphasis added). Even more, courts have "'considerable leeway' in determining the reliability of particular expert testimony under Daubert." Simmons v. Ford Motor Co., 132 F. App'x. 950, 952 (3d Cir. 2005) (quoting Kumho, 526 U.S. at 152-53).

9.   Defendant challenges Mr. Leshner's opinion on account of its brevity (as a supposed indication of a flawed methodology) and presumed inaccuracies in its underlying factual basis (as demonstrated by his "misapprehension" of certain aspects of the "undisputed" factual record). (See generally Def.'s Br. at 14-24; Def.'s Reply at 8-9.) Even a cursory inspection of Mr. Leshner's report reveals the little analysis underlying his opinion of the work platform's defective. (See generally Leshner Rep.) The limited nature of Mr. Leshner's analysis must, however, be viewed through the lens of the

simplicity of the work platform and the commonsense conclusion that he reaches.  Indeed, Mr. Leshner opines little more than that the "protrud[ing]" nature of the locking mechanism created an unnecessary risk of harm, given the readily accessible and safer alternatives.  (Id.)  For that reason, Mr. Leshner explained at his deposition that he "instantly" recognized the design defect, because the protrusion made the locking assembly "unique in itself" by comparison to others platforms, ladders, and work stands.  (Leshner Dep. at 53:4-55:18.)  Against this backdrop, the Court cannot find that Mr. Lesher's opinion rests upon "'unsupported speculation.'"  Calhoun, 350 F.3d at 321 (citation omitted).  Rather, a careful inspection of his report and deposition demonstrate that he founded his opinion upon extensive industry experience and his nuanced knowledge of the available alternatives.[11]  (See generally Leshner Rep.)

10.  Nor can the Court find any fatal defect in the factual basis of Mr. Leshner's opinion.  Indeed, despite Defendant's positions, Mr. Leshner's submissions disclose his understanding of the components of the work platform (including the "step[s]")

---

[11] For that reason, the Court finds Defendant's reliance upon Scrofani v. Stihl Inc., 44 F. App'x 559 (3d Cir. 2002) misplaced.  Critically, the Court of Appeals for the Third Circuit affirmed the exclusion of expert evidence in Scrofani, because the expert "'gave no clue' as to how he reached the 'bald conclusion' he reached." Id. at 562.  Mr. Leshner, by contrast, has provided a sufficient explanation for his largely unremarkable (and arguably unnecessary) opinion.

and the circumstances preceding Plaintiff's injuries (and specifically that Plaintiff inexplicably "came down" across the locking mechanism).  (Id.)  Defendant's arguments to the contrary overly rely upon a parsing of ambiguous deposition testimony, and do not provide a basis for exclusion.  (See generally Def.'s Br. at 14-24.)  Indeed, "an expert may base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion'" rests with the jury."  Krys, ___ F. Supp. 3d ____, 2015 WL 3660332, at *8 & n.15 (citations and internal quotation marks omitted).  For that reason, "Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination."  Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002).

11.  Here, the factual narrative underpinning Mr. Leshner's conclusions resonates with Plaintiff's view of the disputed, but arguably provable, evidence.  (See generally Pl.'s Opp'n.)  As a result, Defendant's challenges go to the weight of the expert evidence, and not its admissibility, and therefore constitute challenges properly presented through cross-examination, and not through exclusion of his otherwise reliable and relevant work on the alleged design defect.  Whether the jury will ultimately adopt the evidence cannot be resolved in the context of the pending motion.  For all of these reasons, the Court finds Mr.

Leshner's opinion admissible on the issue of design defect, but not, as discussed above, on the issue of proximate causation.[12] The Court next addresses the legal framework relative to Plaintiff's product liability claims.

12. **New Jersey's Product Liability Act**. Codified in 1987, the PLA "established the sole method to prosecute a product liability action" against a manufacturer or seller "such that 'only a single product liability action remains.'"[13] Clements v. Sanofi-Aventis, U.S., Inc., ___ F. Supp. 3d ____, 2015 WL 3648911, at *6 (D.N.J. June 11, 2015) (quoting Tirrell v. Navistar Int'l, Inc., 591 A.2d 643 (N.J. Super. Ct. App. Div. 1991)); see also Estate of Edward W. Knoster v. Ford Motor Co., 200 F. App'x 106, 115 (3d Cir. 2006) (same). A "product liability action" within the meaning of the PLA, in turn,

---

[12] In the concluding paragraph of its reply brief, Defendant suggested, for the first time, that the Court conduct "an F.R.E. 104(c) Hearing" to determine the admissibility of Mr. Leshner's opinions. (Def.'s Reply at 9.) The Court, however, finds that the record amassed by the parties on the pending motion proves more than sufficient to assess the reliability of Mr. Leshner's simple opinion. For that reason, the Court, in its "sound discretion," convened no such hearing. Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 418 (3d Cir. 1999); Oddi v. Ford Motor Co., 234 F.3d 136, 154-55 (3d Cir. 2000) (affirming a district court's denial of an evidentiary hearing where the depositions and affidavits of plaintiff's experts sufficiently explained the basis for his conclusions); Steven J. Inc. v. Landmark Am. Ins. Co, No. 14-0474, 2015 WL 3849166, at *4 (M.D. Pa. June 22, 2015) (declining to hold an evidentiary hearing for the same reasons).
[13] Defendant appears to concede that it falls within the PLA's statutory definition of a "manufacturer" and/or "seller," see N.J.S.A. § 2A:58C-8.

includes "any claim or action" for "harm caused by a product,
irrespective of the theory underlying the claim, except actions
for harm caused by breach of an express warranty."[14]  N.J.S.A. §
2A:58C-1(b)(3).  In other words, the PLA "'effectively creates
an exclusive statutory cause of action for claims falling within
its purview,'" e.g., any action for harms caused by a defective
product.  Estate of Edward W. Knoster, 200 F. App'x at 116
(citations omitted); see also Fid. & Guar. Ins. Underwriters,
Inc. v. Omega Flex, Inc., 936 F. Supp. 2d 441, 447 (D.N.J. 2013)
(same).

    13.  The nature of this exclusive cause of action, however,
retains clear limitations.  Specifically, a manufacturer/seller
of a product may be liable only if the plaintiff proves, by a
preponderance of the evidence, that the product failed to be
"'reasonably fit, suitable or safe for its intended purpose'" on
account of a (1) "a manufacturing defect," (2) inadequate
"'warnings or instructions,'" or (3) "'a defective'" design.
Fid. & Guar. Ins. Underwriters, Inc., 936 F. Supp. 2d at 447
(quoting Koruba v. Am. Honda Motor Co., 935 A.2d 787, 795 (N.J.

---

[14] The PLA does not, however, "'recognize either negligence or
implied breach of warranty as separate claims for harm caused by
a defective product,'" because "'those claims have been subsumed
within the [PLA's] new statutory cause of action.'"  Fid. &
Guar. Ins. Underwriters, Inc., 936 F. Supp. 2d at 447 (citations
omitted); see also Port Auth. of N.Y. & N.J. v. Arcadian Corp.,
189 F.3d 305, 313 (3d Cir. 1999) ("Under New Jersey law
negligence is no longer viable as a separate claim for harm
caused by a product.")

14

Super. Ct. App. Div. 2007)); see also N.J.S.A. § 2A:58C-2. A
design-defect theory,[15] in turn, requires Plaintiff to
demonstrate (1) a design defect in the work platform that
existed at the time of Defendant's manufacture and distribution,
and that (2) proximately caused his injuries. See Indian Brand
Farms, Inc. v. Novartis Crop Prot. Inc., 617 F.3d 207, 225 (3d
Cir. 2010) (quoting Jurado v. W. Gear Works, 619 A.2d 1312, 1317
(N.J. 1993)); see also Worrell v. Elliott & Frantz, 799 F. Supp.
2d 343, 350 (D.N.J. June 28, 2011) (citing Myrlak v. Port Auth.
of N.Y. & N.J., 723 A.2d 45, 52 (N.J. 1999); Zaza v. Marquess &
Nell, Inc., 675 A.2d 620, 627 (N.J. 1996); Jurado, 619 A.2d at
1317). The Court will address each element in turn.

14. **Existence of a Design Defect**. The determination of
whether a manufacturer/seller defectively designed a product
involves a "'risk-utility analysis'" that seeks to balance the
magnitude of "'the danger posed by the product'" against the
social utility attained by putting the product on the market.
Truchan v. Nissan Motor Corp. in U.S.A., 720 A.2d 981, 985 (N.J.
Super. Ct. App. Div. 1998) (quoting Johansen v. Makita U.S.A.,
Inc., 607 A.2d 627 (N.J. 1992)); see also Michalko v. Cooke
Color & Chem. Corp., 451 A.2d 179, 183 (N.J. 1982). This

---

[15] As explained above, Plaintiff advances only a claim for design
defect. See, e.g., Pl.'s Opp'n at 3 (listing the alleged
"design defects in this apparatus").)

analysis, in turn, splinters into a two-part inquiry.  See Indian Brand Farms, Inc., 617 F.3d at 225.

15.  First, the fact-finder must "determine whether the plaintiff used the product in an objectively foreseeable manner."  Indian Brand Farms, Inc., 617 F.3d at 225; see also Port Auth. Of N.Y. & N.J., 189 F.3d at 215 (internal quotations and citations omitted) (explaining that "unforeseeable misuse of a product may not give rise to [] liability").  If so, the fact-finder must then "determine whether the reasonably foreseeable risk of harm posed by the reasonably foreseeable use of the product could have been reduced or avoided by a reasonably alternative design."  Indian Brand Farms, Inc., 617 F.3d at 227 (citing Lewis v. Am. Cyanamid Co., 715 A.2d 967, 980 (N.J. 1998)) (emphasis in original); see also Diluzio-Gulino v. Daimler Chrysler Corp., 897 A.2d 438, 441 (N.J. Super. Ct. App. Div. 2006) (citation omitted).  New Jersey law, however, does not require an injured plaintiff "'to prove a specific [design] defect.'"  Myrlak, 723 A.2d at 52 (citing Scanlon v. General Motors Corp., 326 A.2d 673 (N.J. 1974); Manieri v. Volkswagenwerk A.G., 376 A.2d 1317 (N.J. Super. Ct. App. Div. 1977)).  Rather, the injured plaintiff bears the burden of

demonstrating "'something [arguably] wrong' with the product."[16]
Id. (citation omitted).

    16.  On the issue of defect, Defendant essentially argues
that Plaintiff cannot support any claim of defect, because (1)
he concedes that he "simply slipped from the platform" causing
his "leg to go outside the platform," and (2) because he cannot
point to "any component of the platform" that failed to perform
as intended.  (Def.'s Br. at 11-12.)  In other words, Defendant
essentially takes the position that Plaintiff misused the
platform in an unforeseeable manner, and in a way that insulates
Defendant's from any arguable liability.  (See generally id.)
Nevertheless, the Court cannot conclude, as a matter of law,
that Plaintiff's failed attempt to dismount the work platform—
from a fall, slip, or otherwise—constitutes a foreseeable
misuse.  Rather, given the configuration of the platform, common
sense alone creates the reasonable inference that a user of the
work platform might either attempt to dismount improperly or
might simply stumble while in the process of a proper descent.
See Jurado, 619 A.2d at 1317-1318 (discussing common sense

---

[16] In meeting this burden, an plaintiff may resort to "direct
evidence," such as expert testimony, "circumstantial proof," res
ipsa loquitur, or to evidence that tends to "negate[] other
causes of the failure of the product for which the defendant
would not be responsible."  Myrlak, 723 A.2d at 52 (citations
omitted); Knoster, 200 F. App'x at 113-15 (explaining the
relevance of the Restatements and res ipsa loquitur under the
PLA).

examples of "product misuse").  Either scenario would, in turn, create a risk of contact with, and harm from, the metal locking mechanism that protrudes from the top of the platform at the connection point between the work surface and the legs.  (See Ex. C to Def.'s Br.)  Indeed, given the position of the locking mechanism, it requires no special creativity to reconstruct a scenario where, as here, a user rests his right foot on the work surface while lowering his left foot to the step, and then somehow swipes the inside portion of his right knee across the exterior side of the work surface (and the locking mechanism).[17]

17.  Defendant owed Plaintiff a "'duty to prevent an injury caused by the foreseeable misuse of its product'" Truchan, 720 A.2d at 986 (citations omitted), and the Court cannot conclude, upon this record, that the circumstances reflected from the record evidence prove wholly unforeseeable.  Even more critically, the record evidence plainly demonstrates alternative designs, which Mr. Leshner states could have "easily, cheaply

---

[17] This can be contrasted with an event that is "'only theoretically, remotely, or just possibly foreseeable,'" which might have been the case here if the locking mechanism had been placed at the base of the work platform (near the floor) or if it had been constructed in the manner suggested by Mr. Leshner. Oquendo v. Bettcher Indus., Inc., 939 F. Supp. 357, 362 (D.N.J. 1996) (citations omitted).

and effectively eliminated" the hazard posed by the protruding lock.[18]  (Leshner Rep. at 2)

18.  For all of these reasons, the Court finds that the undisputed evidence fails to demonstrate Defendant's entitlement to summary disposition on the question of design defect.  Stated differently, the Court concludes that the record evidence makes out a prima facie case of design defect and contains disputed issues of material fact to be resolved by the jury.

19.  **Proximate Cause**.  Assuming the fact finder finds the product defective, it must determine whether the plaintiff has "offer[ed] sufficient evidence to permit a jury to determine that [the] design defect proximately caused his injur[ies]." Oquendo, 939 F. Supp. at 363-65; see also Jurado, 619 A.2d at 1318-1319 (same).  In cases in which the defect occurred "solely" on account "of the manufacturer's failure to protect against a foreseeable misuse," the "determination of defect predetermines the issue of proximate cause" and requires no further inquiry.  Id. at 1319.  In cases where the defect occurred "for reasons other than particular misuse," by contrast, "the jury must separately determine proximate cause." Id.

---

[18] Mr. Leshner stated that these alternative designs include "a recess" on the locking mechanism, or a "'deflector' plate" that could be "used as a spacer to keep human body parts away from the" locking mechanism.  (Leshner Rep. at 2.)

20.   For purposes of the pending motion, the Court need not definitively decide under which paradigm this action falls. Rather, the Court need only note that proximate cause for purposes of a design defect requires only that the defect—here, the absence of any protective shield or recessed mechanism—acted as a substantially contributing or concurring cause of the injury.  Id.; see also N.J. Model Civil Jury Charges at § 5.40I; see also Perez v. Wyeth Labs. Inc., 734 A.2d 1245, 1261 (N.J. 1999) (A proximate cause need not be the sole cause of harm. It suffices if it is a substantial contributing factor to the harm suffered.").  Thus, for example, "if, in the present case, the accident had happened when a co-employee negligently bumped plaintiff" while he dismounted the work platform, "the manufacturer could [still] be found liable notwithstanding the untoward conduct of the co-employee."  Jurado, 619 A.2d at 1319. As applied here, Defendant could still be found liable for a design defect, despite the fact that the locking mechanism itself did not cause Plaintiff to fall/slip from the platform.

21.   As a result, the Court cannot conclude that the protruding nature of the alleged defect did not in some way contribute or amplify the severity of Plaintiff's injuries, even if factors unconnected to the defect (like Plaintiff's own

carelessness) primarily created the circumstances.[19]  See Johnson v. Salem Corp., 477 A.2d 1246, 1255 (N.J. 1984) (concluding, in a design defect case, that "the absence of a guard" constituted "at the very least a contributing casual factor in the happening of the accident").  Indeed, because "the determination of proximate cause" constitutes primarily "an issue of fact for the jury," courts will remove the issue of proximate cause from the jury only in "rare case[s]."  Cruz-Mendez v. ISU/Ins. Servs. of San Francisco, 722 A.2d 515, 524 (N.J. 1999).  The circumstances of this action do not present this sort of qualifying circumstances.

---

[19] Plaintiff's conduct may, of course, "'be relevant to the 'question of proximate cause,' in that a jury may find that plaintiff's conduct 'had been the sole cause of the accident.'" McGarrigle v. Mercury Maine, 838 F. Supp. 2d 282, 295 (D.N.J. 2011) (citations omitted).  Indeed, a "manufacturer of a defective product may be relieved of liability" if "an intervening, superseding cause" caused the accident.  Hinojo v. N.J. Mfrs. Ins. Co., 802 A.2d 551, 557 (N.J. Super. Ct. App. Div. 2002) (citations omitted).  Whether an intervening event supersedes a defendant's liability, however, "'implicates concerns for overall fairness and sound public policy'" and "ordinarily [presents] a question 'for jury determination.'" Id. (citations omitted).  In view of the disputed evidence, the Court cannot resolve this issue without the jury.  Even more, Defendant could still be liable, even if Plaintiff's conduct solely caused the accident, as explained above, if the jury concluded that the locking mechanism created a foreseeable risk of harm and justified an alternative design.  Reyes v. Keith Mach. Corp., No. 09-5309, 2011 WL 2413666, at *5 (D.N.J. June 8, 2011) (denying a product liability defendant's motion for summary judgment, even in the face of evidence that a factor other than the defect amounted to the sole cause of the injured plaintiff's accident).

22.   Even more critically, because the alleged design defect consists of Defendant's failure to include some kind of barrier or enclosure to prevent a user from coming into contact with the locking assembly, this case may fall into the category of cases in which the jury's resolution of the defect predetermines the question of proximate cause.  See Aly v. Federal Exp., Inc., No. 04-3886, 2010 WL 3118528, at *3 (D.N.J. Aug. 5, 2010) (finding that a case involving the absence of a safety guard "necessarily" predetermined the question of proximate cause).

23.   For all of these reasons, Defendant's motion for summary judgment will be denied.  See, e.g., Kaur v. Standex Int'l Corp., No. 06-2425, 2009 WL 2016073, *6 (D.N.J. July 7, 2009) (denying a motion for summary judgment based upon factual issues relative to proximate cause).  An accompanying Order will be entered.


**December 8, 2015**                        **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge